UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY PEREZ, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SACRAMENTO,<br><br>Defendant. | No. 2:21-cv-00356-TLN-JDP<br><br><br><br>**ORDER** |

This matter is before the Court on Defendant County of Sacramento's ("Defendant") Motion for Summary Judgment. (ECF No. 25.) Plaintiff Kimberly Perez ("Perez") filed an opposition. (ECF No. 31.) Plaintiffs Maurice Holley, Jr., Mitra Holley, and Angel Holley (collectively, "Holley Plaintiffs") filed a statement of non-opposition. (ECF No. 29.) Defendant filed a reply. (ECF No. 33.) For the reasons set forth below, the Court GRANTS Defendant's motion.

///
///
///
///
///
///

1

### I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 6, 2019, at approximately 2:15 p.m., the Sacramento County Sheriff's Office received a call for service regarding a suspicious subject, later identified as Maurice Holley ("Holley"). (ECF No. 31-1 at ¶ 1.) The caller reported that Holley was known to carry knives and machetes and was lying in a ditch at the time of the call. (*Id.* at ¶ 4.) At approximately 2:35 p.m., then-deputy David Cuneo ("Officer Cuneo") responded to the call for service on Bennett Road in south Sacramento. (*Id.* at ¶ 2.) Although a second officer was dispatched to the call, Officer Cuneo proceeded to the scene alone because the second officer was farther away and it was unknown whether Holley was suffering from an urgent medical issue. (*Id.* at ¶ 5.)

Officer Cuneo arrived at the scene, observed Holley (who appeared to be sleeping in a ditch approximately 15–20 feet away), and tapped the horn on his patrol vehicle to attract Holley's attention. (*Id.* at ¶¶ 5–8.) Holley raised his hand after Officer Cuneo tapped his horn a second time. (*Id.* at ¶ 7.) Officer Cuneo approached Holley to request identifying information and asked Holley whether he needed medical attention, and Holley responded no to the latter. (*Id.* at ¶ 10.) Holley identified himself and crawled on his hands and knees up a slight embankment away from the ditch as Officer Cuneo spoke with him. (*Id.* at ¶ 11.) Officer Cuneo asked Holley to sit back down, and although Holley did not initially comply, he eventually sat down with his back against a wooden fence.[2] (*Id.* at ¶ 12.) Holley had papers in his left hand, which drew Officer Cuneo's attention to what he believed to be a firearm on the left side of Holley's waistband.[3] (*Id.* at ¶ 13.) More specifically, Officer Cuneo saw the butt or pistol grip of

---

[1]   The following facts are undisputed unless otherwise noted.

[2]   Perez disputes this fact, arguing, without citing any evidence, that "Cuneo asked Holley to sit on his butt with his hands next to his waist. Holley was attempting to comply with Cuneo's request but because of his physical condition was moving slowly [sic]." (ECF No. 31-1 at ¶ 12.) Perez's statement does not create a genuine dispute of material fact. *See* Fed. R. Civ. Pro 56(e).

[3]   Perez disputes this fact, arguing, without citing any evidence, that "Holley was attempting to get control of the papers he had left on the ground that subsequently became loose as he was complying with the officer's commands." (*Id.* at ¶ 13.) Perez's statement does not create a genuine dispute of material fact as to whether Officer Cuneo perceived what he believed to be a firearm on the left side of Holley's waistband. *See* Fed. R. Civ. Pro 56(e).

the gun sticking out of Holley's waistband and believed the gun to be either a Heckler & Kock USP or a Smith & Wesson M&P Shield. (*Id.* at ¶ 14.) Officer Cuneo took two steps back, drew his handgun, and instructed Holley to "get on the fucking ground." (*Id.* at ¶¶ 15–16.) Holley did not lie on the ground and instead extended his arms forward at shoulder height while holding the papers in his left hand, then transferred the papers from his left hand to his right hand while he held them extended at shoulder length. (*Id.* at ¶¶ 17–18.) Holley then lowered his left hand from shoulder height toward what appeared to be a firearm in his waistband. (*Id.* at ¶ 19.) Officer Cuneo saw Holley lower his left hand toward the supposed firearm and believed Holley was reaching for it. (*Id.* at ¶ 20.) Officer Cuneo believed his life was in imminent danger and fired his weapon at Holley, striking and killing him.[4] (*Id.*) Officer Cuneo immediately reported the shooting via radio, signaling emergency responders to arrive as quickly as possible. (*Id.* at ¶ 21.) Officer Cuneo did not know the firearm Holley carried was an imitation firearm. (*Id.* at ¶ 25.)

Perez filed this action on February 25, 2021 and identified herself as Holley's surviving spouse. (ECF No. 1.) Perez and the Holley Plaintiffs (members of Holley's family) filed the operative First Amended Complaint ("FAC") on June 3, 2021, alleging various claims pursuant to 42 U.S.C. § 1983 ("§1983") and state law and Defendant and Does 1–10. (ECF No. 4). On January 26, 2023, Defendant filed the instant motion for summary judgment. (ECF No. 24.)

**II.   STANDARD OF LAW**

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

---

[4]   Perez disputes this fact, arguing, without citing any evidence, that "Holley fired his service weapon nine times." (*Id.* at ¶ 20.) Perez fails to explain how this statement creates a genuine issue of material fact, and the Court finds that it does not. *See* Fed. R. Civ. Pro 56(e).

3

1 *Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof
2 at trial on a dispositive issue, a summary judgment motion may properly be made in reliance
3 solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at
4 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a
5 party who does not make a showing sufficient to establish the existence of an element essential to
6 that party's case, and on which that party will bear the burden of proof at trial.

7 If the moving party meets its initial responsibility, the burden then shifts to the opposing
8 party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.*
9 *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*
10 *Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute,
11 the opposing party may not rely upon the denials of its pleadings, but is required to tender
12 evidence of specific facts in the form of affidavits, and/or admissible discovery material, in
13 support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must
14 demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the
15 suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that
16 the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for
17 the nonmoving party. *Id*. at 251–52.

18 In attempting to establish a factual dispute, the opposing party need not establish a
19 material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be
20 shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."
21 *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to
22 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for
23 trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

24 In resolving the summary judgment motion, the court examines the pleadings, depositions,
25 answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed.
26 R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence
27 of the opposing party is to be believed and all reasonable inferences that may be drawn from the
28 facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.

4

at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  To demonstrate a genuine issue that necessitates a trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

### III.   ANALYSIS

Defendant moves for summary judgment as to Plaintiffs' federal claims (Claims One through Seven).  Defendant also moves for summary judgment as to Perez's claims, arguing Perez does not have standing to pursue those claims.[5]  Lastly, Defendant requests the Court decline to exercise supplemental jurisdiction over the state law claims (Claims Eight through Eleven).  The Court will address Plaintiffs' claims in turn.

#### A.   Claims One Through Four

In moving for summary judgment as to Claims One through Four, Defendant argues "Plaintiff has not named or served any individual related to these claims, nor are they asserted against Defendant County of Sacramento."  (ECF No. 25-1 at 13.)

The Ninth Circuit disfavors the use of unnamed defendants.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("As a general rule, the use of 'John Doe' to identify a defendant is not favored.").  Sometimes, however, plaintiffs cannot identify an alleged defendant before filing a complaint.  In such circumstances, the Ninth Circuit allows plaintiffs to use unnamed defendants — unless it is clear that discovery would not uncover the defendants' identities or that the complaint would be dismissed on other grounds.  *Id.* (citation omitted).

Claims One through Four are brought only against "Doe Deputy."  (ECF No. 4 at 6–8.) While the use of a Doe Defendant may have been appropriate during the early stages of this action, Plaintiffs fail to explain why they have not named a specific individual in these claims

---

[5]   Because the Court grants Defendant's motion on other grounds, the Court need not and does not address Defendant's argument about Perez's standing.

despite having ample opportunity during discovery to identify the officer involved in the incident. Instead, Perez argues that serving Defendant is functionally the same as serving Doe Defendant, since the latter works for the former. (ECF No. 31 at 2.) However, a case cannot proceed against a defendant who has been neither identified nor served. *See Bonderer v. Unknown*, No. 2:20-CV-2540-AC-P, 2022 WL 1104747, at *1 (E.D. Cal. Apr. 13, 2022), *report and recommendation adopted*, No. 2:20-CV-2540-JAM-AC-P, 2022 WL 2053187 (E.D. Cal. June 7, 2022). Moreover, Rule 4(m) provides that a court may dismiss a claim for failure to effect timely service after providing notice, absent a showing of good cause of the failure. *See* Fed. R. Civ. P. 4(m).

Because Plaintiffs failed to name or serve any individual for Claims One through Four, and because Rule 4(m) allows for dismissal of claims for failure to serve, the Court GRANTS Defendant's motion for summary judgment as to those claims.

B.  Claims Five Through Seven

Defendant contends — and Plaintiffs do not dispute — that Claims Five through Seven are *Monell* claims based solely on Officer Cuneo's use of force. (ECF No. 25-1 at 13; ECF No. 31 at 2.) In moving for summary judgment as to those claims, Defendant argues there was no underlying constitutional violation because Officer Cuneo's use of force was objectively reasonable. (ECF No. 25-1 at 13–16.) Defendant also argues that, even if Plaintiffs could show an underlying constitutional violation, there is insufficient evidence for *Monell* liability. (*Id.* at 16–19.) In opposition, Perez argues "there was an excessive use of force based on the dash cam video of the event, the preliminary report by the Sacramento County District Attorney." (ECF No. 31 at 2.) As to *Monell* liability, Perez argues "cities may not assert the same defense of qualified immunity that may be available to individual officers" and "cities can only be held liable when an officer's violation . . . had been shown to be the result of municipal policy or custom." (*Id.*)

Based on the record before the Court, it appears Officer Cuneo's use of force was objectively reasonable. All the material facts in this case are undisputed. (*See* ECF No. 31-1.) Most notably, it is undisputed that Officer Cuneo fired his weapon after seeing Holley reach toward his left waistband, where Officer Cuneo believed a firearm to be located after seeing the

6

butt or pistol grip of the gun sticking out of Holley's waistband moments earlier. (*Id.* at 3–4.) The Court has also reviewed dash camera footage of the incident clearly showing Officer Cuneo fire his weapon within seconds of Holley moving his left hand toward the left side of his waistband. (Video Footage, Exhibit 11 at 1:54–1:56.) Although the reasonableness of the use of deadly force is usually a question for the jury, the Ninth Circuit has held the use of deadly force is objectively reasonable when a suspect reaches for what the officer perceives to be a firearm in the suspect's waistband. *See, e.g.*, *Cruz v. City of Anaheim,* 765 F.3d 1076, 1078 (9th Cir. 2014) (holding it would be "unquestionably reasonable" for an officer to shoot a suspect who "reaches for a gun in his waistband, or even if he reaches there for some other reason.").

However, the Court ultimately need not and does not decide whether Officer Cuneo's use of force was objectively reasonable because Plaintiffs fail to raise a triable issue of material fact as to Defendant's liability under *Monell*. It is well-established that municipalities cannot be held liable under § 1983 for unconstitutional torts of their employees based solely on respondeat superior. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 693–94 (1978). Pursuant to *Monell*, a municipality is only liable under § 1983 when its own illegal acts are a "moving force" in the constitutional violation. *Id.* A plaintiff may assert *Monell* liability based on: (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or (4) where "an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'" *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (citations omitted).

Although Plaintiffs allege *Monell* claims based on the theories of ratification (Claim Five), failure to train (Claim Six), and unconstitutional policy or custom (Claim Seven), Plaintiffs fail to provide evidence to support any of these theories. Perez's opposition as to these claims is incoherent and devoid of citations to evidence or relevant authority. In contrast, Defendant provides undisputed evidence that its policies and training on the use of force comply with the Fourth Amendment. (ECF No. 31-1 at 6–8.) As such, the Court finds there is no evidence to establish a triable issue of material fact as to Defendant's *Monell* liability.

Accordingly, the Court GRANTS Defendant's motion for summary judgment as to Claims Five through Seven.

### C. Supplemental Jurisdiction over State Law Claims

The Court's jurisdiction in this case is based on federal question jurisdiction. (ECF No. 4 at 2.) Defendant requests the Court decline to exercise supplemental jurisdiction over the remaining state law claims. (ECF No. 25-1 at 21.) Perez does not address this argument in her opposition. (*See* ECF No. 31.)

Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over a [state law] claim" if "the district court has dismissed all claims over which it has original jurisdiction." *Yuhre v. JP Morgan Chase Bank*, No. 2:09-CV-02369-GEBJFM, 2010 WL 1404609, at *8 (E.D. Cal. Apr. 6, 2010). Because there are no longer any viable federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Accordingly, Claims Eight through Eleven are DISMISSED without prejudice to Plaintiffs bringing those claims in state court if they choose to do so. *See* 28 U.S.C. § 1367(c)(3).

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment. (ECF No. 25.) The Clerk of Court is directed to enter judgment in Defendant's favor and close the case.

IT IS SO ORDERED.

Date: August 4, 2023

_____
Troy L. Nunley
United States District Judge

8